# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# MONROE DIVISION

| | | |
|---|---|---|
| MONA R. ADAMS | * | CIVIL ACTION NO. 08-0135 |
| VERSUS | * | JUDGE JAMES |
| MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE HAYES |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

## Background & Procedural History

On June 9, 2003, Mona R. Adams filed her initial application for Title II Disability Insurance Benefits. (Tr. 46-48). She alleged disability since July 31, 2002, due to sinusitis, asthma, lupus, hypertension, and diabetes. (Tr. 46, 54). The application was denied at the initial stage of the administrative process. (Tr. 34, 36-39). Thereafter, Adams requested and received a December 7, 2004, hearing and a February 28, 2005, supplemental hearing before an Administrative Law Judge ("ALJ"). (Tr. 338-369, 370-374). However, in a June 13, 2005, written decision, the ALJ determined that Adams was not disabled under the Social Security Act. (Tr. 12-22). Adams appealed the adverse decision to the Appeals Council. However, on September 2, 2005, the Appeals Council denied Adams' request for review. (Tr. 4-6).

On November 1, 2005, Adams sought review before this court. *Adams v. Commissioner, Social Security Administration*, Civil Action Number 05-1900 (W.D. La.). On March 1, 2006, the undersigned granted the Commissioner's unopposed motion to remand the matter for further proceedings pursuant to the sixth sentence of 42 U.S.C. § 405(g). (Tr. 334). Upon remand from the district court, the Appeals Council vacated the prior administrative decision and remanded the matter to an ALJ with instructions to conduct further proceedings and to consider consolidating the application with Adams' newly filed claims. (Tr. 300-301).[1]

A new ALJ held another hearing on February 21, 2007. (Tr. 515-550). However, in an April 25, 2007, written decision, the ALJ determined that Adams was not disabled under the Social Security Act, finding at Step Four of the sequential evaluation process that she was able to return to her past relevant work as a mail room clerk and/or general office clerk. (Tr. 308-322).[2] Adams appealed the adverse decision to the Appeals Council. On November 29, 2007, the Appeals Council denied Adams' request for review. (Tr. 301-303), and on January 31, 2008, Adams sought review before this court. She alleges the following errors:

(1) the ALJ erred in failing to find that Adams' back impairment is severe;

(2) the ALJ violated plaintiff's right to due process when he failed to convene a new hearing to permit plaintiff to again cross-examine the Commissioner's medical expert; and

(3) the ALJ's Step Four determination is not supported by substantial evidence.

---

[1] On January 20, 2006, Adams protectively filed new applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments. (Tr. 392-394, 399, 498-500). They were denied at the initial stage of the administrative process. (Tr. 337, 381-384, 501-505).

[2] The ALJ consolidated the Title II claims, but rendered a companion decision on the Title XVI claim. (Tr. 312).

**Standard of Review**

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, substantial evidence clearly requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

**Determination of Disability**

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability. *See* 42 U.S.C. § 423(a)(1)(D). The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1) An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

(2) An individual who does not have a "severe impairment" of the requisite duration will not be found to be disabled.

(3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.

(4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.

(5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001);  20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled.  *Bowen v. Yuckert*, 482

4

U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps Two and Three

The ALJ determined at Step Two of the sequential evaluation process that Adams suffers from severe impairments of diabetes mellitus, sinusitis, hypertension, lupus, hyperlipidemia, obesity, and history of depression, resolved. (Tr. 314). He concluded, however, that the impairments were not severe enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 317).

Plaintiff contends that the ALJ applied the incorrect standard to determine that her alleged back impairments were not severe.[3] Yet even so, when, as here the ALJ's analysis proceeds beyond Step Two of the sequential evaluation process, strict adherence to *Stone* and its requirements is not required. *See, Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir. 1988); *Chapparo v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987); *Jones v. Bowen*, 829 F.2d 524, n. 1 (5th Cir. 1987). Moreover, once a severe impairment is determined to exist, all medically determinable impairments must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523 & 416.923. Although the instant ALJ determined that plaintiff's cervical spine impairment was not severe, he nonetheless proceeded to consider the medical record and

---

[3] "'[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Anthony, supra*, (quoting, S*tone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985).

5

the aggregate impact of plaintiff's impairments, including those that "[were] not severe." (*See*, Tr. 313). *See*, discussion, *infra*.

## II. Residual Functional Capacity

The ALJ determined that Adams retained the residual functional capacity to perform light work reduced by the need for a sit/stand option. (Tr. 317-318).[4] She could occasionally climb, (but no ladders, ropes, or scaffolds) balance, stoop, kneel, crouch, and crawl. *Id*. She must avoid dust, fumes, and gases. *Id*. She also experienced moderate limitations in her ability to interact with the public and to set goals independently of others. *Id*.

In his assessment, the ALJ relied in part upon the interrogatory responses and testimony of non-examining agency physician, A. R. Ebrahim, M.D. (Tr. 320). Plaintiff contends that the Commissioner violated her due process rights because she was not afforded an opportunity to cross-examine Ebrahim upon remand. *See, Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990) (claimant enjoys right to cross-examine physician). Although this matter was remanded due to a lost hearing tape that contained plaintiff's cross-examination of Dr. Ebrahim,[5] there is no

---

[4] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[5] The original ALJ in this matter held a supplemental hearing to permit plaintiff to cross-examine Dr. Ebrahim. (Tr. 370-374). However, the hearing tape was rendered inaudible due to a

indication that upon remand, plaintiff asked the ALJ for another opportunity to cross-examine Dr. Ebrahim. (*See e.g.*, Tr. 517). Instead, plaintiff's counsel simply objected to Dr. Ebrahim's interrogatory responses. *Id*. Counsel's post-hearing letter to the ALJ also did not request a subpoena for Dr. Ebrahim. (Tr. 506-507).

To the extent that the instant ALJ erred by failing to *sua sponte* issue a new subpoena for Dr. Ebrahim, plaintiff has failed to demonstrate resulting prejudice. *See, Curtis v. Commissioner Social Sec. Admin.*, 2008 WL 919692 (W.D. La. Feb. 27, 2008) (citing *Ka Fung Chan v. INS*, 634 F.2d 248, 258 (5th Cir.1981) (must show substantial prejudice in order to prove denial of due process in an administrative proceeding)). Plaintiff has not demonstrated what she intended to prove had she been afforded another opportunity to cross-examine Dr. Ebrahim. Moreover, Dr. Ebrahim's opinion is cumulative and adds nothing to the Commissioner's decision. Even if Ebrahim's opinion is disregarded in its entirety, the remaining record provides substantial evidence to support the ALJ's decision.

Three consultative physicians examined plaintiff in connection with her disability allegations; two other physicians reviewed plaintiff's medical records and evaluated her impairments. All five physicians opined that she was capable of light and sedentary work. For example, on October 27, 2003, David Hebert, M.D. examined plaintiff at the request of Disability Determination Services. (Tr. 228-231). He indicated that Adams' primary complaints were lupus, rhabdomyolysis with kidney damage, arterial diabetes mellitus, and asthma. *Id*. She reported that ever since she left the hospital she had suffered from diabetes and kidney disease.

---

malfunction in the recording equipment. (Tr. 98-99). Thus, the original ALJ summarized Dr. Ebrahim's testimony. *Id*. Plaintiff's counsel reviewed the summary and stated that he disagreed "to some extent." (Tr. 100-101). When this matter was previously before this court, the Commissioner sought remand due to the partially blank hearing tape. (Tr. 335).

*Id*. She further stated that her feet and legs hurt all of the time. *Id*. She complained of chronic low back pain and generalized aching in all of her joints. *Id*.

Upon examination, her straight leg raising test was completely negative bilaterally and her gait and station were completely normal without assistive devices. *Id*. She demonstrated no difficulty walking on her heels or toes. *Id*. All joints exhibited a full range of motion. *Id*. She had no motor or sensory deficits; her hand grip was 5/5; hand dexterity was excellent. *Id*. There was no evidence of depression or anxiety. *Id*. Hebert diagnosed a long history of lupus erythematosus which was essentially in remission; arterial hypertension which was well controlled; type II diabetes mellitus with no clear evidence of end organ damage; recent rhabdomyolysis in November 2002, from which she had completely recovered; and no evidence of asthma. *Id*. Hebert saw no reason why she could not perform routine walking, sitting, standing, carrying and lifting in an eight hour day. *Id*.[6]

On September 13, 2005, a board certified internist, Charles Knight, M.D., examined plaintiff. (Tr. 438-448). Adams reported that the reason for her disability was low back pain that radiated to both lower extremities, which had bothered her for two to three years. *Id*. She denied current chest pain or shortness of breath. *Id*. She denied arthralgia beyond her back pain. *Id*. Her lungs were clear to auscultation and percussion bilaterally. *Id*. There was no cyanosis, clubbing, or edema in her extremities. *Id*. Motor examination was 5/5 in all extremities, and sensation was intact. *Id*. Her gait was normal. *Id*. She climbed upon the table without

---

[6] Relying upon Dr. Hebert's examination findings, G. Dzurik M.D., completed a physical residual functional capacity assessment form on November 13, 2003. (Tr. 232-239). He indicated that Adams could occasionally lift 20 pounds, and frequently lift 10 pounds. *Id*. She could stand, walk, and sit for about six hours in an eight hour day. *Id*. Pushing and pulling were unlimited. *Id*. Postural activities were limited to occasional. *Id*. No other limitations were indicated. *Id*.

difficulty. *Id*. She demonstrated no muscular atrophy whatsoever. *Id*. There was no evidence of lupus or significant kidney dysfunction. *Id*. He diagnosed low back pain with symptoms of radiculopathy. *Id*.[7] However, her straight leg test was totally negative. *Id*. He further diagnosed hypertension, under reasonable control; hyperlipidemia; diabetes mellitus, under good control; morbid obesity; and asthmatic bronchitis, by report. *Id*. Knight opined that Adams was capable of sedentary or light work, restricted to lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently, with a sit/stand option. *Id*. Her postural activities were limited to occasional, but she could stand and walk frequently. *Id*.[8]

On April 8, 2006, Ken Barrick, M.D., examined plaintiff at the request of Disability Determination Services. (Tr. 484-486). During the examination, Adams reported achy pain in her lower back, across both sides, and into both legs. *Id*. The pain was only alleviated with rest. *Id*. She also complained of knee and thigh pain, but no shoulder pain. *Id*. She denied mood changes or depression. *Id*. She had a normal gait and could tandem walk without difficulty. *Id*. However, she had difficulty bending and squatting. *Id*. She demonstrated 5/5 grip strength, with adequate fine motor movements, dexterity, and ability to grasp objects bilaterally. *Id*. She did

---

[7] Knight thought that it was critical for Adams to undergo an MRI to evaluate her lumbar spine. (Tr. 448). However, there is no evidence that plaintiff ever requested the ALJ to send her for an MRI. *Id*. To obtain reversal due to the ALJ's failure to adequately develop the record, the claimant must demonstrate resulting prejudice. *Brock v. Chater*, 84 F.3d 726,728 (5th Cir. 1996); *see also, Newton v. Apfel*; 209 F.3d 448 (5th Cir. 2000). "To establish prejudice, a claimant must show that [s]he could and would have adduced evidence that might have altered the result." *Id.* (Internal quotes omitted). Plaintiff did not argue that the ALJ erred in failing to obtain an MRI, nor has she alleged or demonstrating resulting prejudice.

[8] On January 27, 2006, after reviewing plaintiff's medical record and the reports of the examining physicians, Herbert Kleinman, M.D. opined that Adams was capable of gainful employment at the sedentary or light level. (Tr. 435-437). He stated that her main problem was her chronic low back pain. *Id*. He agreed with the limitations recognized by Dr. Knight. *Id*.

not appear depressed or anxious. *Id*. She had 5/5 strength in all muscle groups. *Id*. Her chest x-ray was normal. *Id*.

Barrick diagnosed obesity, asthma, diabetes, hypertension, low back pain, carpal tunnel disease, and possible malingering. *Id*. Adams' grip, gait, and station were grossly normal except for her inability to squat and rise. *Id*. Barrick opined that she should be able to sit, walk, and/or stand for a full workday with rest breaks, lift/carry objects of at least ten pounds, hold a conversation, respond appropriately to questions, and carry out and remember instructions. *Id*.

In sum, three consultative physicians have examined plaintiff during the relevant period, considered her complaints of back pain and other ailments, yet have rendered opinions consistent with the ALJ's residual functional capacity assessment. Similarly, even after excluding Dr. Ebrahim, two non-examining physicians have reviewed plaintiff's medical record and echoed the findings of the consultative examiners. The sole dissenting medical opinion stems from plaintiff's treating physician, Cynthia Brown-Manning, M.D.[9] As observed by the

---

[9] On July 8, 2004, Brown-Manning completed a Medical Statement Regarding Physical Abilities and Limitations for Social Security Disability Claim. (Tr. 266). She indicated that Adams can work zero hours per day. *Id*. She can stand for fifteen minutes at a time, but not at all during a workday. *Id*. She can sit fifteen minutes at a time, but zero during a workday. *Id*. She cannot lift even five pounds. *Id*. She can never bend; stoop; use her left hand for fine or gross manipulation; work around dangerous equipment; or tolerate heat or cold, dust, smoke, fumes, or noise. *Id*. She can occasionally: balance, use her right hand for fine and gross manipulation, and operate a motor vehicle. *Id*. Her hearing is limited. *Id*. She needs to elevate her legs most of the time during an eight hour workday. *Id*. She suffers from extreme pain. *Id*.

Dr. Brown-Manning also wrote an October 12, 2004, letter to Disability Determination Services wherein she indicated that Adams had been diagnosed with non-insulin dependent diabetes mellitus, depression, chronic sinusitis, allergic rhinitis, asthma, hypertension, degenerative joint disease, and lupus. *Id*. (Tr. 261-262). She stated that Adams was unable to perform any and/or all work-related duties. *Id*. She believed that disability was the best and only option for plaintiff at that point. *Id*. Of course, a physician's statement that a claimant is "disabled" or "unable to work" is not a medical opinion, and is afforded no special significance under the regulations. 20 C.F.R. § 404.1527(e); *see also, Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

Fifth Circuit,

> "ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir.1985). The treating physician's opinions, however, are far from conclusive. "[T]he ALJ has the sole responsibility for determining the claimant's disability status." *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990).
>
> Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the physician's testimony. The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. *Scott*, 770 F.2d at 485. In sum, the ALJ "is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly." Id.; see also 20 C.F.R. § 404.1527(c)(2) ("If any of the evidence in your case record, including any medical opinion(s), is inconsistent with other evidence or is internally inconsistent, we will weigh all the other evidence and see whether we can decide whether you are disabled based on the evidence we have.").

*Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

Here, the ALJ discounted Dr. Brown-Manning's limitations because they were not supported by objective evidence or the record as a whole. (Tr. 320). The ALJ observed that Dr. Brown-Manning's limitations were contradicted by plaintiff's own testimony. For example, plaintiff testified that her carpal tunnel syndrome had "gotten better," and she could lift between five and ten pounds. (Tr. 526, 532, *see also*, Tr. 349, 352). Moreover, plaintiff's pain medications were not consistent with debilitating or "extreme" pain, as Dr. Brown-Manning. characterized it. (Tr. 320).

In the end, the ALJ credited the universally consistent findings of the several examining

11

and non-examining, consultative physicians in this case. The ALJ's decision to place little weight or to "effectively [reject]" the limitation(s) recognized by Dr. Brown-Manning is supported by substantial evidence. *Ward v. Barnhart*, 192 Fed. Appx. 305, 308-309, 2006 WL 2167675 (5th Cir. 08/02/2006) (unpubl.); *see also, Nugent v. Astrue*, 278 Fed. Appx. 423(5th Cir. May 16, 2008) (unpubl.) (ALJ entitled to discount treating physician's conclusory statement because it contradicted earlier treatment notes, objective medical findings, and other examining physicians' opinions). Although plaintiff undoubtedly disagrees with the ALJ's resolution of the conflicting evidence, this court is not at liberty to substitute its judgment for that of the ALJ. *Newton*, 209 F.3d at 452. Accordingly, the undersigned finds that the ALJ's residual functional capacity assessment is supported by substantial evidence and is free of legal error.[10]

## III. Step Four

At Step Four of the sequential evaluation process, the ALJ employed a vocational expert ("VE") to find that Adams was able to return to her past relevant work as a mail clerk and/or general office clerk, as those jobs are generally performed in the national economy. (Tr. 321).[11]

At the hearing, the VE acknowledged that her testimony was inconsistent with the Dictionary of Occupational Titles ("DOT"). Plaintiff contends that the ALJ erred because he did not fulfill his obligation to obtain an explanation from the VE for the discrepancy between her testimony and the DOT. *See*, SSR 00-4p. However, the VE attributed the divergence to the fact

---

[10] Plaintiff did not challenge the ALJ's assessment of her mental impairment(s). According to plaintiff's treating physician, she did "great" with the medication prescribed for that condition. (*See*, Tr. 457-458).

[11] Past relevant work is defined as "the actual demands of past work or 'the functional demands ... of the occupation as generally required by employers throughout the national economy.'" *Jones v. Bowen*, 829 F.2d 524, 527 (5th Cir. 1987) (citing, Social Security Ruling 82-61)

that the DOT does not address non-exertional limitations or limitations such as the need for multiple breaks and a sit/stand option. (Tr. 548). According to Social Security Ruling 00-4p, information provided by a VE that is not included in the DOT is a reasonable explanation for a conflict with the DOT. (SSR 00-4p).[12]

According to the Fifth Circuit:

> [t]he value of a vocational expert is that [s]he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job.

*Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).

In this case, the record reflects an adequate basis to support the ALJ's decision to defer to the expertise of the VE. *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000).[13] Plaintiff's assignment of error lacks merit.

Plaintiff next argues that her past relevant work was actually a composite job which she performed at the medium exertional level. Plaintiff cites Social Security Ruling 82-61:

> composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case. **For those instances where available**

---

[12] The ALJ further explained that the VE provided the information based upon her experience in career counseling. (Tr. 321). Indeed, the VE testified that she was duly qualified by the Commissioner to provide expert vocational opinions. (Tr. 543). Plaintiff did not challenge the VE's qualifications. (*See*, Tr. 543-550).

[13] The court emphasizes that ". . . claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing." *Carey, supra*. Certainly, if plaintiff harbored any doubts concerning the sufficiency of the VE's explanation, she was obliged to raise the issue upon cross-examination, rather than "saving" it as a basis for appeal.

> **documentation and vocational resource material are not sufficient to determine how a particular job is usually performed, it may be necessary to utilize the services of a vocational specialist or vocational expert**.

SSR 82-61 (in pertinent part) (emphasis added).

Of course, the ALJ fully complied with SSR 82-61; he consulted a vocational expert who listened to plaintiff's testimony regarding her past relevant work, and opined that her prior jobs were properly classified as mail room clerk and file room clerk which are generally performed at the light exertional level. (Tr. 543-545). The ALJ further questioned Adams regarding the duties of her prior work and elicited testimony that she worked as a "porter," but the VE nonetheless maintained that her prior work was properly classified as a mail room clerk that she actually performed at a medium exertional level. (Tr. 545-546). In other words, plaintiff could not return to her past relevant work as she actually performed it, but she could perform the work as it is generally performed in the national economy.[14]

## IV. Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's determination that Adams is not disabled under the Social Security Act, is supported by substantial evidence and is free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be

---

[14] Plaintiff cited several cases to support her argument. To the extent that the cited cases are not otherwise distinguishable, the court observes that they are not binding precedent, i.e. decisions issued by the U.S. Court of Appeals for the Fifth Circuit or the United States Supreme Court.
    The court also observes that according to a December 20, 2005, letter that Adams sent to her disability insurer, she represented that she worked as a receptionist/switchboard operator, for a time. (Tr. 433-434). During her stint as a receptionist, she was required to speak, write, answer the telephone, and sort file folders. *Id*. It is unlikely that these duties exceeded the light exertional level. *See e.g.*, DOT Code 237.367-038. It was not until the company discontinued the receptionist position that she "floated" to the customer service department. (Tr. 434).

**AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 6th day of February, 2009.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE